UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

MARGARET BRANCH,

        Plaintiff,

        v.                                          Case No. 11-C-0745

MICHAEL J. ASTRUE
Commissioner of Social Security,

        Defendant.

DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER
AND REMANDING CASE

        Margaret Branch seeks judicial review of Commissioner's decision denying her applications for Disability Insurance Benefits and Supplemental Security Income. She filed applications in August of 2006, alleging a September 20, 2004, onset date, based on poor circulation, an enlarged heart, high blood pressure, lung problems, asthma, arthritis, and knee pain. (Tr. 198-206, 255.) The applications were denied initially and upon reconsideration. (Tr. 119-122, 124-127, 128-131, 132.) The ALJ held a hearing on November 14, 2008, during which Branch and a vocation expert testified. (Tr. 46-76.) In the December 2008 decision, the ALJ denied her claim, but the Appeals Council granted her request for review and remanded for further proceedings. (Tr. 82-96.)

        On January 28, 2011, the ALJ held a second hearing. (Tr. 7-45.) The subsequent decision found that Branch had the residual functional capacity to perform light work except that she was limited to no more than occasional climbing of ramps and stairs and no climbing of ladders, ropes, or scaffolds; no more than frequent bilateral handling or fingering

with her upper extremities. Additionally, he determined that Branch must avoid even moderate exposure to extreme cold or heat, wetness or humidity, pulmonary irritants, and unprotected heights, hazards, or the use of moving machinery, and she was limited to work involving only simple, routine, and repetitive tasks. (Tr. 104.) Therefore, the ALJ found her not disabled and not entitled to DIB or SSI. (Tr. 112-113.)

When requesting review from the Appeals Council, Branch amended her onset date to her fiftieth birthday, April 1, 2009, and dismissed the claim for Title II Benefits. The Appeals Council denied review, but subsequently Branch was found disabled and approved for SSI effective May 2011. This appeal is limited to her request for SSI from April 1, 2009 to May of 2011.

On appeal, this court must affirm the decision of the Commissioner if findings are supported by substantial evidence in the record. 42 U.S.C. 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Substantial evidence is more than a scintilla, but less than a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004).

Branch asserts that substantial evidence does not support the ALJ's finding that she is capable of performing light work with restrictions from the April 1, 2009, amended onset date, through the date she was approved for benefits in May of 2011. Branch amended the onset date to her fiftieth birthday because her age, limited education, and past work would make her eligible for benefits if she is reduced to sedentary work.

2

Light work is characterized as lifting a maximum of twenty pounds occasionally, with frequent lifting or carrying of up to ten pounds, standing or walking off and on for a total of six hours during an eight-hour workday, intermittent sitting, and using hands and arms for grasping, holding and turning objects. *Clifford v. Apfel*, 227 F.3d 863, 869 n. 2 (7th Cir. 2000) (citing 20 C.F.R. § 404.1567(b) and Social Security Ruling 83–10)). Branch believes that the ALJ ignored crucial evidence regarding her impairments and limitations as they relate to light work. For example, testing documents that she suffers from "moderate to severe" pulmonary obstruction (Tr. 725, 613, 1310, 1315, and 1316) and doctor's reports establish the continued presence of lower extremity pain, numbness and edema. (Tr. 433, 494, 639, 643, 647, 651, 1004, 1057, 1061, 1065, 1069, 1073, 1074, 1079, 1099, 1200-1201, 1023-1204, 1207-1208, 1217, 1220, 1222, 1227-1228, 1232-1233, 1238-1239, 1244-1245, 1247-1248, 1250, 1256, and 1286-1288.)

As an initial matter, the ALJ relied upon the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. (Tr. 107.)

This language has been criticized as unhelpful, and worse, as implying "that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). Although the ALJ cited additional reasons for discrediting Branch, the vast majority were based on noncompliance. For example, the ALJ found (1) that Branch's complaints were out of proportion to the objective medical evidence; (2) that while her neurologist prescribed a cane there was no medical explanation for the

Case 2:11-cv-00745-CNC   Filed 09/27/12   Page 3 of 7   Document 21

loss of mobility and no scans or tests to substantiate the diagnosis or document a chronic rather than transitory problem; (3) Branch complains of sleepiness but admits that she only used the C-PAP machine eight days a month; (4) her claim of shortness of breath and trouble moving around caused by COPD is not fully credible and she has failed to quit smoking and lose weight; (5) she has a long history of non-compliance with her blood pressure medication; (6) she does not elevate her feet or wear compression stockings as prescribed; and (7) the opinion of Dr. Steven Brown was based on Branch's non-compliant behavior and not reasonably consistent with her independent lifestyle and the physical examination. (Tr. 107-110.)

Branch challenges each of these findings. To begin, Branch questions the ALJ's findings regarding the lack of evidence to support her doctor's prescription for use of the cane. Her treating neurologist prescribed the use of the cane in 2008 after finding her unsteady. (Tr. 693.) The ALJ pointed out that her gait was not always found to be unsteady and found to be normal and appropriate in December 2008, and in January, June, August, and September of 2009, which he believed suggested that the pain was transitory in nature. These records note full muscle strength, normal muscle tone, no atrophy or abnormal movements, and a normal neurological examination, but they do not indicate whether she was using a cane during the examination. (Tr. 1200, 1204, 1208, 1213, 1218, 1222, 1227, 1233, 1239, 1244, 1250, 1256, 1260, 1264, 1275, 1280, 1287, 1296, and 1304.) At the same time, the ALJ dismisses the pain component and relies solely on the lack of objective evidence.

Ultimately, remand is required because the ALJ's findings with respect to noncompliance are not supported by substantial evidence and do not comport with Seventh

4

Circuit case law. The ALJ cited Branch's failure to use the C-PAP machine on a regular basis, wear the TED compression stockings, quit smoking, take her blood pressure medication and lose weight. However, there is no evidence that her condition would improve to the point that her ability to work would be restored if she complied with the prescribed treatment. *See* 20 C.F.R. § 404.1530 and SSR 82-59.

Admittedly, at pages 1306-1308 of the record, Dr. Steven Brown's February 4, 2010, notes reflect that Branch admitted using the machine only eight days a month and Dr. Brown warned her that this was the equivalent of not using it at all. He instructed her to use the C-PAP machine for at least four to six hours a night for at least 21 days of the month. However, Dr. Brown indicated that he would make arrangements with her home care company for a six week download, to assess her compliance and troubleshoot any problems with her mask or C-PAP (Tr. 1309), and it is not clear whether this occurred.

In any event, when asked about compliance, Branch testified that she sometimes forgets, doesn't always have the money, and that depression plays a role. (Tr. 22-23.) She also testified that she had a referral to treat the depression, but the psychologist or therapist would not accept her insurance. (Tr. 23.) These factors were not considered. Moreover, the ALJ cited doctor's notes in the file spanning August 26, 2009, through December 22, 2010, indicating that there were regular discussions regarding the importance of medication compliance. These same notes reveal that Branch reported taking the medications as directed.

The court particularly takes issue with the ALJ's finding that Branch's COPD symptoms were "secondary to her decision to continue smoking and Branch's failure to lose weight, according to the medical records, and her lack of motivation to eliminate the causes

Case 2:11-cv-00745-CNC   Filed 09/27/12   Page 5 of 7   Document 21

of her discomfort strongly suggests that her limitations are not as severe as alleged." (Tr. 109.) This circuit does not take such a narrow view. In *Rousey v. Heckler*, the Seventh Circuit reversed the ALJ's denial of benefits premised in part on the claimant's failure to quit smoking where the claimant suffered from chronic obstructive pulmonary disease. 771 F.2d 1065, 1069 (7th Cir. 1985). The court held that no evidence demonstrated that she would be restored to a non-severe condition if she quit smoking. *Id.* Similarly, in *Shramek v. Apfel*, the Seventh Circuit remanded where the ALJ made no finding that the prescribed treatment – quitting smoking – would return the claimant to work. 226 F.3d 809, 812–13 (7th Cir. 2000)("We note that even if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up smoking that the claimant is incredible when she testifies that the condition is serious or painful."); *see Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("[B]y treating obesity as an aggravating factor, the administrative law judge may have been hinting that Barrett should lose weight, that obesity is like refusing to wear glasses or a hearing aid-essentially a self-inflicted disability that does not entitle one to benefits or boost one's entitlement by aggravating another medical condition.).

To the extent that the ALJ relied on noncompliance as a factor in discrediting Dr. Brown, this portion of the decision must be revisited as well. The January 27, 2011, pulmonary assessment of Dr. Brown indicates that he had been her treating physician since February 13, 2000. (Tr. 1502.) His notes document COPD, asthma, obstructive sleep apnea, and chronic tobacco use. (*Id.*) Dr. Brown indicated that Branch could walk ½ block, and must walk or lie down after sitting for more than 2 hours, and predicted that Branch would be absent approximately five times a month. (*Id.*) Without substantial evidence to

6

support the findings that Branch lacked the motivation to comply with the prescribed treatment and no medical evidence that compliance would restore her ability to work, the decision lacks a logical bridge from the findings to the conclusion. Thus,

    IT IS ORDERED that the decision of the Commissioner is reversed

    IT IS FURTHER ORDERED that this case is remanded for further proceedings consistent with this decision.

    Dated at Milwaukee, Wisconsin, this 27th day of September, 2012.

                                       BY THE COURT

                                       /s/ C. N. Clevert, Jr.
                                       C. N. CLEVERT, JR.
                                       CHIEF U. S. DISTRICT JUDGE